UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES *ex rel.*
    GENARO BENITES
    CABALLERO and PATRICIA
    DORIS LEE DOMINGUEZ;

Qui Tam Plaintiffs,

v.

HENCORP BECSTONE CAPITAL, L.C.,
    and RICARDO MAZA,

Defendants.
_____/

**Filed under seal pursuant to 31 U.S.C. § 3729** *et seq.*

JURY TRIAL DEMANDED

## COMPLAINT

### INTRODUCTION

1.    This is an action for treble damages and civil penalties against Defendants Hencorp Becstone Capital, L.C., (Hencorp) and Ricardo Maza (collectively "defendants"), for violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.

2.    At all times relevant hereto, Hencorp, acting through its Regional Director Maza, procured candidates in Latin America for participation in the loan guaranty program of the Export-Import Bank of the United States ("Ex-Im Bank"). Specifically, defendants approached businesses in Latin America and informed them that they may be eligible for loans guaranteed by the Ex-Im Bank to purchase goods and/or equipment for export from the United States. Defendants offered to help the businesses make application to the Ex-Im Bank for inclusion in the Ex-Im Bank loan guaranty program, and offered to of make a loan to them if the Ex-Im Bank approved them for the loan guaranty.

3. In fact, however, defendants schemed to defraud both the companies they solicited into the program and the Ex-Im Bank. In such instances, they informed the potential borrowers that they had not been approved, when they had; forged the signature of the borrower on loan documents; forged the signature of the borrower on documents diverting the payment to another entity that never had intention to repay it, or only intended to service the note from proceeds of other such loans; and when the entire scheme could no longer be maintained, claimed reimbursement from the Ex-Im Bank for the defaulted sham loans.

4. In other instances, Defendants conspired with companies to take loans that they had no intention to repay, knowing that the Ex-Im Bank was insuring them.

5. In the relevant time period, starting in September 1, 2004 defendants made and used false statements and fraudulent means to wrongfully claim payment of Ex-Im Bank guarantees on numerous sham loans.

6. Further, even after its upper management had been made aware of these schemes and the fact that the loans initiated by its agent Defendant Ricardo Maza were shams, Defendant Hencorp Becstone Capital, L.C. still made claims on the Ex-Im guaranties of sham loans and maintained the payments it had already received on sham loans.

7. Tenidos Peruanas y Servicios en General S.R.L. and its principal, Genaro Benites Caballero were the victims of one of these schemes. Defendants procured a sham loan in the name of Tenidos Peruanas y Servicios en General S.R.L., forging Genaro Benites Caballero's signature to do so, diverted the proceeds from that loan, defaulted the loan, and claimed payment from the Ex-Im Bank for the defaulted loan. The United States was harmed by the theft of funds it provided through the Ex-Im Bank loan guaranty program.

## JURISDICTION AND VENUE

8. This action arises under 31 U.S.C. § 3729 *et seq.* Therefore, this is a case or controversy arising under the laws of the United States. Hence, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9. This action may be brought in this judicial district under 31 U.S.C. § 3732(a) because, *inter alia,* the Defendants transacted business in this judicial district. Further, defendants made or caused to be made false statements and false claims for payment to government employees in this judicial district.

10. Defendant Hencorp is a Florida Corporation with its principal place of business in Miami-Dade County, Florida.

11. Defendant Ricardo Maza is a resident and citizen of Peru.

12. Qui Tam Plaintiff Genaro Benites Caballero is a resident and citizen of Peru. Qui Tam Plaintiff Patricial Doris Lee Dominguez is a resident and citizen of Peru. Collectively, the Qui Tam Plaintiffs are referred to herein as "Relators".

## FACTUAL ALLEGATIONS

13. In or around December 2006, defendants solicited Tenidos Peruanos y Servicios S.R.L. to enter into an agreement to represent Tenidos Peruanas y Servicios en General S.R.L on an application for credit guaranteed by the Ex-Im Bank. On December 19, 2006, defendants sent an e-mail to Tenidos Peruanos y Servicios S.R.L. explaining what Defendants would need to process the credit application, and attaching a letter of interest for countersignature. A copy of the e-mail transmitting the letter of interest is attached hereto as Exhibit A. This solicitation was made to Tenidos Peruanos y Servicios S.R.L. through its General Manager, Genaro Benites Caballero.

14. In January 2007, Tenidos Peruanos y Servicios S.R.L. executed and entered into the letter of interest. A copy of the countersigned letter of interest is attached hereto as Exhibit B.

15. Soon thereafter, Tenidos Peruanos y Servicios S.R.L. provided the required information for a credit application to Defendants, and Defendants submitted the application to the Ex-Im Bank. This application was false in that Defendants did not intend to provide a loan to Relators, but in fact intended to divert the loan funds. This application was submitted to Ex-Im Bank at 811 Vermont Avenue, N.W. Washington, D.C. 20571.

16. A few months later, on or around March or April, 2007, Defendants informed Tenidos Peruanos y Servicios S.R.L. that the application for credit had been denied. In fact, the application for credit had not been denied.

17. On May 30, 2007, Defendants forged the signature of Genaro Benites Caballero as General Manager of Tenidos Peruanos y Servicios S.R.L. onto a Promissory Note in favor of Defendant Hencorp Becstone Capital, L.C. for $955,062.37. A copy of this sham Promissory Note is attached hereto as Exhibit C. This sham promissory note, or a facsimile thereof, was provided by defendants to the Ex-Im Bank at 811 Vermont Avenue, N.W. Washington, D.C. 20571.

18. On May 31, 2007, Defendant Ricardo Maza forged a letter to himself from Tenidos Peruanos y Servicios S.R.L., and forged the signature of Genaro Benites Caballero on the letter. This letter requested that the Defendant Hencorp Becstone Capital L.C. pay $878,580.00 of the loan proceeds to Punto Pimax SAC on the false premises that Punto Pimax was Relator's primary shareholder and that it had paid at Relator's request $1,185,440.00 to ITM

LTD. South, a U.S. exporter of used textile equipment. A copy of this letter is attached hereto as Exhibit D.

19. For several years following, Defendants made sham payments on the outstanding note. However, at some point, they ceased making the payments. The loan thus was technically defaulted on the books of Defendant Hencorp Becstone Capital, L.C. Hencorp Becstone Capital, L.C. then made claim for payment on the defaulted sham loan. This claim for payment was made to Ex-Im Bank at 811 Vermont Avenue, N.W. Washington, D.C. 20571.

20. At all times relevant hereto, Defendant Ricardo Maza was the agent of Defendant Hencorp Becstone Capital, L.C. and knew that sham loans, false claims for payment and false statements in support of those claims were being submitted to the U.S. Government in furtherance of the scheme described herein.

21. At least as early as February 25, 2010, the upper management of Defendant Hencorp Becstone Capital, L.C. also was aware that Defendant Ricardo Maza was engaged in the false loan scheme described herein. At least as early as February 25, 2010, the upper management of Defendant Hencorp Becstone Capital, L.C. knew that it wrongfully possessed funds belonging to the U.S. Government.

22. Nonetheless, Defendant Hencorp Becstone Capital, L.C. continued to claim guaranty payments on defaulted sham loans, and/or maintained funds that it had received on what it knew were sham loans that its own personnel had benefitted from.

23. Nonetheless, Defendant Hencorp Becstone Capital, L.C. did not return those funds.

24. Thus, the Ex-Im Bank continued to seek payment on the sham loan guaranties from the companies, such as Relator, that were the victims of Defendants' scam. A copy of a

letter from the Ex-Im Bank making claim for a loss on an Ex-Im guaranty against Relator dated May 31, 2011 is attached hereto as Exhibit E.

25. Upon receipt of demands for payment on a loan that had never been entered into by Tenidos Peruanos y Servicios S.R.L., Relators Patricia Doris Lee Dominguez, legal counsel for Tenidos Peruanos y Servicios S.R.L and Genaro Benites Caballero investigated Defendants, and learned of the sham loan scheme related herein.

26. Through their investigation, Relators learned that Defendants claimed the guaranties on sham loans guaranteed by the Ex-Im Bank to several other companies, including Mario's Air and SECORE Servicios y Construcciones Reateguí S.C.R.L. ("SECORE"). They learned that defendant Maza was the shareholder in numerous companies with common management that were the recipients of similar sham loans guaranteed by the Ex-Im Bank.

## First Claim - FALSE CLAIMS

27. All of the preceding allegations are incorporated herein.

28. The Defendants submitted or caused to be submitted false claims for payment or approval, as described herein. The Defendants knowingly presented or caused to be presented these false claims for payment or approval to an officer or employee of the United States.

29. The Defendants thus knowingly presented, or caused to be presented, to an officer or employee of the United States Government false or fraudulent claims for payment or approval.

## Second Claim - FALSE STATEMENTS

30. All of the preceding allegations are incorporated herein.

31. The Defendants knowingly made, used or caused to be made or used numerous false records or statements material to their false or fraudulent claims.

32. For instance, as described above, Defendants knowingly made, used, or caused to be made, false statements concerning the loans that the Ex-Im bank guaranteed.

33. The Defendants thus knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Government.

WHEREFORE the Qui Tam Plaintiffs requests the following relief from the Defendant:

A. Three times the amount of damages that the Government sustains because of the acts of the Defendant;

B. A civil penalty of $11,000 for each violation;

C. An award to the Qui Tam Plaintiff for collecting the civil penalties and damages;

D. Award of an amount for reasonable expenses necessarily incurred;

E. Award of the Qui Tam Plaintiffs' reasonable attorneys' fees and costs;

F. Interest; and

G. Such further relief as the Court deems just.

## JURY REQUEST

The Qui Tam Plaintiffs request a jury for all issues that may be tried by a jury.

Respectfully Submitted,

DO CAMPO & THORNTON, P.A.
Attorneys for Qui Tam Plaintiffs
Bank of America Tower
100 S.E. Second St., Ste. 2700
Miami, Florida 33131
Telephone: (305) 358-6600
Facsimile: (305) 358-6601

By:

_____
JOHN THORNTON
District of Columbia Bar No. 980680
jt@dandtlaw.com

# Hencorp- Financiamientos del exterior para compra de maquinaria y/o equipos de USA

De: **Maza, Ricardo** (rmaza@hencorp.com)
Enviado: martes, 19 de diciembre de 2006 15:45:54
Para: tenidosperuanos_@hotmail.com
CC: mrubiov@starmedia.com; mrubiov@estudiorubio.com
    1 archivo adjunto
    TenidosPeruanos(US$1,MM).doc (310,0 KB)

Estimado Genaro:

De acuerdo a lo conversado en la semana pasada, adjunto al presente te estoy enviando una carta de intención para un financiamiento de hasta US$1,MM.

Para preparar la aplicación de créditos, se necesitan los siguientes documentos:

1. Carta de intención adjunta debidamente firmada en señal de aceptación.

2. Perfil completo de la empresa: Datos de la empresa, composición del accionariado, gerencia y ejecutivos, ventas, clientes, proveedores, mercado, competencia, etc.

3. Tres últimos EEFF (2003, 2004, 2005) con notas y anexos asi como los EEFF de situación del 2006. (los últimos que tengan)

4. Dos cartas de referencias bancarias que indiquen que vienen cumpliendo con sus obligaciones de manera satisfactoria.

5. Dos cartas de referencias de proveedores que indiquen que vienen cumpliendo con sus obligaciones de manera satisfactoria.

6. Proformas o cotizaciones de lo que se va a adquirir por aprox. US$ 1,2MM

Cualquier información adicional que requieran por favor sirvanse contactarme al teléfono 222-4799.

Muy atentamente,

Ricardo Maza L.
Director Regional
Hencorp Becstone Capital L.C.
rmaza@hencorp.com
(511) 222-4799 of. (511) 421-7110 fax



EXHIBIT A

# HENCORP

Diciembre 19, 2006

Sr. Genaro Benites Caballero
Gerente General
Teñidos Peruanos & Servicios en General S.R.L.
Lima, Perú

Estimado Genaro,

Estamos agradecidos por la oportunidad de presentarles esta "carta de interés" que enmarca los términos y condiciones generales bajo los cuales Hencorp Becstone Capital ("HB Capital") consideraría otorgar un financiamiento a Teñidos Peruanos & Servicios en General S.R.L. ("Teñidos Peruanos") para la compra de activos de capital producidos y exportados desde los Estados Unidos de América ("USA").

Esta carta es una expresión de interés solamente. No representa un "compromiso en firme" de nuestra parte para financiar ésta o cualquier otra transacción para Teñidos Peruanos. La emisión de un compromiso en firme de financiamiento está sujeto a obtener la aprobación de la garantía de crédito a la exportación por parte del U.S. Ex-Im Bank bajo el cual garantizarían nuestro crédito a Teñidos Peruanos, nuestra aprobación interna del crédito y la culminación de toda la documentación legal requerida a satisfacción de HB Capital, Ex-Im Bank y Teñidos Peruanos

| | |
|---|---|
| Deudor: | Teñidos Peruanos & Servicios en General S.R.L. Perú |
| Acreedor: | Hencorp Becstone Capital, L.C. ó Asignados |
| Garante: | Cualquier garantia personal o corporativa según lo requiera Ex-Im Bank |
| Exportador: | Proveedores de los Estados Unidos de América |
| Monto del Crédito: | US $ 1,000,000.00 |
| Monto del Préstamo: | Hasta 85% del monto del contrato de exportación o contenido americano (a ser finalmente determinado por Ex-Im Bank), más 100% del Fee de Garantía de Ex-Im Bank. |
| Propósito: | Financiar activos de capital producidos y exportados desde Estados Unidos de América |
| Pago Inicial: | Bajo los términos del U.S. Ex-Im Bank, el comprador debe hacer un pago de 15% del valor de la factura al exportador en USA |
| Pago del principal: | Hasta 5 años en 10 pagos semestrales de capital e intereses causados, comenzando no más tarde de 6 meses después de la exportación. Todos los pagos de intereses y de capital deben ser libres de cualquier gravámen o deducciones que pudieran surgir por impuestos u otros rubros. |
| Fee de Garantía Del Ex-Im Bank: | Pago único del Fee de Garantía al Ex-Im Bank de **4.76%** por el término de 5 años, **el cual puede ser financiado en un 100% por el plazo del financiamiento**. Este Fee es determinado finalmente por el Ex-Im Bank y es estimado en esta carta para referencia sin perjuicio u obligación para HB Capital |

EXHIBIT B

# HENCORP

| | |
|---|---|
| **Comisión de Compromiso:** | Una vez aprobado el crédito, Ex-Im Bank cobra una comisión de compromiso de un octavo de un uno por ciento (0.125%) por año (base 360 días) sobre la parte del crédito no utilizada. Esta comisión comienza a ser causada 60 días después que Ex-Im Bank emite su compromiso final de garantizar el crédito. El Deudor es responsable de pagar esta comisión. |
| **Tasa de Interés:** | Intereses son pagaderos cada semestre vencido sobre el balance del préstamo. La tasa de referencia es LIBOR de seis meses a ser ajustada cada semestre en cada "rollover", más un margen del **1.00%** |
| **Comisión de Estructuración:** | Comisión de estructuración – 3% flat del monto del crédito, pagadero al momento que Exim Bank apruebe la transacción. El Deudor puede financiar el 85% de esta Comisión por el plazo del crédito sujeto a aprobación del Ex-Im Bank. |
| **Gastos Generales y Legales:** | El deudor se hace responsable por gastos generales en la preparación de la aplicación al Ex-Im Bank desde la firma de esta carta hasta la culminación y cierre del crédito. Estos gastos incluyen viajes, correspondencia, reportes de crédito, etc. Así mismo el Deudor se hace responsable de los gastos legales. Los gastos generales y legales tendrán un máximo de US$3,000. |

Esta carta representa nuestro interés de proveer a Teñidos Peruanos este financiamiento para la compra de bienes de capital provenientes de USA. Su aceptación a esta carta propuesta representa su consentimiento de que Hencorp represente a Teñidos Peruanos ante el U.S. Ex-Im Bank de manera exclusiva en esta transacción.

Atentamente,

Ricardo Maza L.
Director Regional
Hencorp Becstone Capital, L.C.

Aceptado por Teñidos Peruanos & Servicios en General S.R.L.

Por: _[signature]_

Nombre: _PEDRO M. BENITES CABALLERO_

Posición: _GERENTE GENERAL_

Fecha: _ENERO 2007_

2

ENCORP          PHONE NO. : 511 4217110          Jun. 01 2007 09:41AM P5

## Teñidos Peruanos & Servicios en General S.R.L.

### PROMISSORY NOTE

US$955,062.37                                                                    May 30, 2007

FOR VALUE RECEIVED, Teñidos Peruanos & Servicios en General S.R.L., Prolongacion Cangallo 1242 La Victoria, Lima, Peru (the "Maker") by this promissory note (this "Note") hereby unconditionally promises to pay to the order of Hencorp Becstone Capital, L.C. (the "Lender") at JP Morgan Chase Bank, New York, United States of America, for deposit into the account number 910-2-764-546, the principal sum of nine hundred and fifty five thousand sixty two United States Dollars and thirty seven cents (US$955,062.37) in installments as hereinafter provided and to pay interest on the principal balance hereof from time to time outstanding, as hereinafter provided, at the rate of one percent (1.00%) per annum (the "Margin") above LIBOR (as hereinafter defined); *provided* that, beginning on the Ex-Im Bank Claim Payment Date (as hereinafter defined), the definition of Special LIBOR shall apply for all purposes, including, without limitation, the paragraph hereof, in place of the definition of LIBOR and the Maker shall pay interest on the principal balance hereof from time to time outstanding at a rate equal to the greater of (i) Special LIBOR or (ii) Special LIBOR plus the Margin.

For purposes of this Note, (a) "LIBOR" shall mean, in relation to any Interest Period (as hereinafter defined), the rate of interest per annum (rounded upward, if necessary, to the nearest one-sixteenth of one percent (1/16 of 1%)) quoted by the principal London office of the Lender or an affiliate of the Lender designated by the Lender at approximately 11:00 a.m. (London time) two Business Days (as hereinafter defined) prior to the first day of such Interest Period for the offering to leading banks in the London interbank market of United States Dollar deposits for a period and in an amount comparable to such Interest Period and the principal amount upon which interest is to be paid during such Interest Period; (b) "Special LIBOR" shall mean, with respect to any Interest Period, the rate of interest per annum specified as the "$ Libor BBA Fixing – Interbank Fixing" rate (or any successor title) in the Financial Times under the table entitled "World Interest Rates – Domestic Money Rates" (or any successor title) in effect on the day two Business Days prior to the first day of the relevant Interest Period for a term similar to the term of such Interest Period; *provided*, that if no rate is specified for such day, the applicable rate shall be the rate specified for the immediately preceding day for which a rate is specified, and if more than one rate is specified, the applicable rate shall be the highest of all such rates; *provided further*, that in the event the Financial Times either completely ceases publication or discontinues publication of the Dollar LIBOR Interbank fixing rate, then Ex-Im Bank shall

Ex-Im Bank Form of Floating Rate Single Disbursement Note (10/01)

EXHIBIT C

determine Special LIBOR by reference to a financial publication with similar international or U.S. circulation, which publication shall be selected by Ex-Im Bank in its sole discretion; (c) "Interest Period" shall mean (i) the period commencing on June 5th, 2007 (the "Disbursement Date") and extending up to, but not including, the next Payment Date (as hereinafter defined); *provided*, however, that if the Disbursement Date is within sixty (60) days of such Payment Date, the Interest Period shall end on the next succeeding Payment Date; and (ii) thereafter the period commencing on each Payment Date and extending up to, but not including, the next Payment Date; "Business Day" shall mean any day on which dealings in Dollar deposits are carried on in the London interbank market and on which the Federal Reserve Bank of New York and commercial banks in London and New York City are/is open for domestic and foreign exchange business.

The principal hereof shall be paid in ten (10) installments, the first of which shall be in the sum of ninety five thousand five hundred and six United States Dollars and twenty one cents (US$95,506.21) and shall be due and payable on December 25th, 2007. The remaining installments shall each be in the sum of ninety five thousand five hundred and six United States Dollars and twenty four cents (US$95,506.24) and shall be due and payable semi-annually thereafter on June 25th and December 25th of each year (each, a "Payment Date"), *provided* that, on the last Payment Date, the Maker shall repay in full the principal amount hereof then outstanding.

Interest on this Note is due and payable on each Payment Date, beginning on December 25th, 2007. Interest will be calculated on the basis of the actual number of days elapsed (including the first day, but excluding the last day) over a year of 360 days.

In the event that any amount of the principal hereof or accrued interest on this Note is not paid in full when due (whether at stated maturity, by acceleration or otherwise), the Maker shall pay to the Lender on demand interest on such unpaid amount (to the extent permitted by applicable law) for the period from the date such amount was due until such amount shall have been paid in full at an interest rate per annum equal to (x) six percent (6%) per annum above the interest rate then applicable under the first paragraph hereof until the end of the then current Interest Period, and (y) thereafter eight percent (8%) per annum above LIBOR.

Notwithstanding the fifth paragraph hereof, beginning on the date (the "Ex-Im Bank Claim Payment Date") on which the Export-Import Bank of the United States ("Ex-Im Bank") shall have made a claim payment to the Lender under the Master Guarantee Agreement (Medium Term Credits – Electronic Compliance Program), dated as of March 26, 2003 between the Lender and Ex-Im Bank and identified as MGA No. 0288-M (as amended from time to time, the "MGA"), in the event any amount of principal of or accrued interest on this Note owing to Ex-Im Bank is not paid in full when due (whether at stated maturity, by acceleration or otherwise), the Maker shall pay to Ex-Im Bank on demand interest on such unpaid amount (to the extent permitted by applicable law) for the period from the date such amount was due until such amount shall have been paid in full, at an interest rate per annum equal to one percent (1%) per annum above the interest rate otherwise then applicable under the first paragraph hereof.

Ex-Im Bank Form of Floating Rate Single Disbursement Note (10/01)

PHONE NO. : 511 4217110    Jun. 04 2007 09:33AM P4

All payments received hereunder shall be applied in the manner and order of priority determined by the Lender in its sole discretion. Whenever any payment falls due on a day that is not a Business Day, the due date for payment shall be extended to the next following Business Day.

All payments to be made by the Maker under this Note shall be made in United States Dollars in immediately available and freely transferable funds no later than 11:00 A.M. (New York City time) on the date on which due, without set-off, counterclaim, deduction, withholding on account of taxes levied or imposed under the laws of the Government of Peru, restrictions or conditions of whatever nature.

The Maker may from time to time prepay on any Payment Date all or part of the principal amount of this Note, *provided* that: (a) any partial prepayment shall be in a minimum principal amount of one hundred thousand United State dollars (US$100,000); (b) the Maker shall have given the Lender and Ex-Im Bank at least ten (10) days' prior written notice of the prepayment (which notice shall be irrevocable); and (c) the Maker shall have paid in full all amounts due under this Note as of the date of such prepayment, including interest on the amount prepaid which has accrued to the date of prepayment. Prepayments shall be applied to the installments of principal of this Note in the inverse order of their maturity, and, in cases where more than one promissory note of the Maker is outstanding, pro rata to each such promissory note.

Upon default in the prompt and full payment of any installment of principal hereof or the interest on this Note, the entire outstanding principal amount hereof and interest on the Note to the date of payment shall immediately become due and payable at the option and upon the demand of Ex-Im Bank.

The Maker hereby waives demand, diligence, presentment, protest and notice of every kind, and warrants to the holder that all action and approvals required for the execution and delivery hereof as a legal, valid and binding obligation of the undersigned, enforceable in accordance with the terms hereof, have been duly taken and obtained. The failure of the holder hereof or of Ex-Im Bank to exercise any of its rights hereunder in any instance shall not constitute a waiver thereof in that or any other instance.

To the maximum extent permitted by law, the Maker agrees to pay on demand all costs and expenses of the Lender or Ex-Im Bank that are incurred in connection with the enforcement of this Note, including, but not limited to, reasonable attorneys' fees and expenses related thereto.

THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK, U.S.A.

                            Teñidos Peruanos & Servicios en General S.R.L.

                          By _____
                                            (Signature)

                       Name  GENARO M. BENITES C.
                                   (Print)

                       Title  GERENTE GENERAL
                                   (Print)

Promissory Note No. 01

FROM : HENCORP     PHONE NO. : 511 4217110     Jun. 01 2007 09:39AM P2

# TEÑIDOS PERUANOS & SERVICIOS EN GENERAL S.R.L.

Lima, 31 de Mayo del 2007

Señores
Hencorp Becstone Capital L.C.

At. Sr. Ricardo Maza L.
Director Regional

Estimado Sr. Maza:

Por medio de la presente solicitamos a Uds. que se abone en la cuenta corriente del Banco Continental que abajo detallamos, el importe del desembolso que realizarán por la suma de US$ 878,580.00 por el crédito que Uds. nos han concedido para la compra de maquinaria de procedencia americana.

Esto se debe a que nuestro principal accionista, Punto Pimax SAC, pagó por orden e instrucciones nuestras la suma de US$ 1,185,440.00 mediante transferencia Bancaria a los señores de ITM LTD South.

La transferencia deberán realizarla a:

BANCO CONTINENTAL
LIMA PERU
PUNTO PIMAX SAC
CTA CTA:  0011 486 0100039307 82
SWIFT:    BCONPEPL

Atentamente,

Genaro Benites C.
Gerente General

EXHIBIT D



EXPORT-IMPORT BANK
OF THE UNITED STATES

---

May 31, 2011

**Teñidos Peruanos & Servicios en General S.R.L.**
**Attn: Genaro M. Benites Caballero**
**Prolongacion Cangallo 1242 Urb. Matute**
**La Vitoria, Lima**
**Peru**

Telephone:   305-808-9859
Fax:         Unknown

Subject: Ex-Im Bank Claim No. AP-406731
    Ex-Im Bank Insurance Policy No. AP-406731
    Insured: Hencorp Becstone Capital, LC
    Amount: $285,808.40 - Immediately Due and Payable

Dear Mr. Caballero:

    The Export-Import Bank of the United States (Ex-Im Bank) is a United States Government Agency engaged in financial support of U.S. exports. The referenced transaction, which involved the sale of yarn dye machine, complete yarn lab for yarn testing and accessories, was insured under an Ex-Im Bank insurance policy.

As present owner of the indebtedness, Ex-Im Bank hereby makes demand on Tenidos Peruanos & Servicios en General S.R.L. as Borrower, for immediate payment of the amount due. The total due is the principal amount of $285,808.40, plus accrued interest. Payment should be made by bank wire using the following payment instructions:

> **FEDERAL RESERVE BANK OF NEW YORK**
> **U.S. TREASURY DEPARTMENT**
> **021030004**
> **TREAS/NYC/CTR/**
> **BNF=/AC-4984 OBI=**
> **REF: CLAIM NO. AP-406731**



EXHIBIT E

---

We urge you to give this matter your immediate attention. If no satisfactory arrangement can be made to pay this debt, you will be denied future access to Ex-Im Bank financial assistance. Further, Ex-Im Bank may initiate litigation and your company will be reported to the International Union of Credit and Investment Insurers and other credit reporting agencies. These actions may jeopardize your ability to obtain future credit, guarantees, or insurance supported by the U.S. Government or other countries.

Please note that you will soon be contacted by Global Recovery Group, LLC who will be acting to collect this debt on Ex-Im Bank's behalf.

Very truly yours,

Enrique Sotelo
Manager – Workouts & Restructuring
Asset Management Division
Tel: 202-565-3608
Fax: 202-565-3625
Enrique.Sotelo@exim.gov


cc: Global Recovery Group
    Files